**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ROBERT E. HAVELL REVOCABLE TRUST**

                    **Plaintiff,**

           **v.**

**41 STILL RD, LLC, *et al.*,**

                    **Defendants.**

**Civ. No. 20-2468 (ES) (MAH)**

**OPINION**

MCNULTY, DISTRICT JUDGE

      Before the Court is the motion (DE 6) of Defendants 41 Still Rd, LLC and Aaron Goldklang, to dismiss the complaint based on lack of personal jurisdiction. This matter has been reassigned from Judge Salas to me for purposes of this motion. Having considered the parties' submissions, I decide this matter without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motion is GRANTED.

## I.    Background[1]

      Plaintiff Robert E. Havell Revocable Trust (the "Trust") was established on May 11, 2001. (Compl. ¶ 1). As of December 16, 2019, the Trust maintains

---

[1] Citations to documents in the record will be abbreviated as follows:
      Compl. = Plaintiff's complaint, DE 1-1
      Mov. Br. = Defendants' brief in support of their motion to dismiss, DE 6-5
      Goldklang Decl. = Aaron Goldklang's declaration in support of motion, DE 6-1
      Opp. Decl. = Robert E. Havell's declaration opposing Defendants' motion, DE 11
      Note = The Note at issue in this litigation, Compl. Exhibit B

offices in Morristown, New Jersey and Longboat Key, Florida. (*Id.*; Opp. Decl. ¶ 2). Three individuals—Robert E. Havell, Carol A. Havell, and Roy E. Kurnos— are co-trustees of the Trust. (Compl. ¶1).

According to the complaint, the Trust was the owner of certain real property commonly known as 41 Still Road, Monroe, New York (the "Property"). (*Id.* ¶ 2). On January 15, 2015, the Trust conveyed the Property to defendant 41 Still Rd., LLC, for a purchase price of $715,000. (*Id.* ¶ 3). At closing, 41 Still Rd. paid the Trust $125,000 by bank check and gave the Trust a first purchase money note secured by a mortgage in the amount of $590,000 (the "Note"). (*Id.* ¶ 4). Defendant Goldklang personally guaranteed the Note. (*Id.* ¶ 16).

The Trust alleges that on August 1, 2019, 41 Still Rd. defaulted on its payment obligations under the Note and has, after written notice, failed and refused to cure the default. (*Id.* ¶ 6). As a result, on January 24, 2020, the Trust commenced a lawsuit against Defendants in the New Jersey Superior Court. (*See* DE 1, Notice of Removal ¶ 2). The Trust brings claims against 41 Still Rd. and Goldklang (as guarantor) for unpaid amounts due under the Note as well as costs and attorneys' fees. (*See* Compl. ¶¶ 7–17).

On March 6, 2020, Defendants removed the case to this Court, invoking the Court's diversity jurisdiction. (*See* Notice of Removal ¶ 5). Shortly thereafter, Defendants moved to dismiss the complaint for lack of personal jurisdiction. (DE 6). Plaintiff opposes the motion.

**II.    Legal Standard**

To withstand a motion to dismiss under Federal Rule of Civil Procedure

12(b)(2), a plaintiff bears the burden of establishing the court's personal

jurisdiction over the moving defendants by a preponderance of the evidence.

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102

(3d Cir. 2009). "[W]hen the court does not hold an evidentiary hearing on the

motion to dismiss, the plaintiff need only establish a prima facie case of

personal jurisdiction and the plaintiff is entitled to have its allegations taken as

true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v.

Smith,* 384 F.3d 93, 97 (3d Cir. 2004).

To support personal jurisdiction, the plaintiff must establish "with

reasonable particularity sufficient contacts between the defendant and the

forum state." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223

(3d Cir. 1992); *see also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948

F.3d 124, 129 (3d Cir. 2020). And the plaintiff must establish such

"jurisdictional facts through sworn affidavits or other competent evidence . . . .

[A]t no point may a plaintiff rely on the bare pleadings alone in order to

withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam

jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6. (quoting *Patterson v. FBI*,

893 F.2d 595, 603–04 (3d Cir. 1990)). Indeed, the plaintiff must respond to the

defendant's motion with "actual proofs"; "affidavits which parrot and do no

more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time

Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 & n.9 (3d Cir. 1984).

Here, both sides have submitted declarations containing the facts they

consider relevant. No party has requested an evidentiary hearing. At any rate,

applying what amounts to a summary judgment standard, I find that there is no clash of facts requiring a hearing.

## III.   Analysis

A federal court has jurisdiction over a nonresident defendant to the extent authorized by the law of the state in which the court sits, so long as the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 4(e); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). In New Jersey, the long arm rule permits the assertion of in personam jurisdiction as far as it is constitutionally permissible under the Due Process Clause. N.J. Court Rule 4:4–4; *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). Personal jurisdiction under the Due Process Clause, in turn, depends on "the relationship among the defendant, the forum, and the litigation . . . ." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). The plaintiff must show that the defendant "has purposefully directed its activities toward the residents of the forum state, . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

There are two kinds of personal jurisdiction: general and specific. *Danziger*, 948 F.3d at 129. Defendants argue that this Court lacks both general and specific jurisdiction over them. (Mov Br. at 4–7.) For the following reasons, I agree with Defendants.

4

### A.      General Jurisdiction

A court may exercise general jurisdiction over an individual defendant who is domiciled within forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'" (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014))). A defendant which is a corporation (or an LLC) must generally possess "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (quotation marks and citation omitted). A corporation is "at home" at least—and usually solely—where it is incorporated or has its principal place of business. *Id.* (citing *Daimler*, 571 U.S. at 137); *see also Hannah v. Johnson & Johnson Inc.*, No. 18-10319, 2020 WL 3497010, at *16 (D.N.J. June 29, 2020) ("[F]or the purposes of general personal jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of incorporation.").

Defendants argue that the Court lacks general jurisdiction over them because Goldklang is not domiciled in, and 41 Still Rd. is not "at home" in, New Jersey. (Mov. Br. at 5). For support, Goldklang submits a declaration in which he explains that he is "a citizen of the State of New York and ha[s] lived in New York continuously since [he] was born." (Goldklang Decl. ¶ 5). He also explains, *inter alia*, that 41 Still Rd. (i) was organized under the laws of the state of New York; (ii) has always been a New York limited liability company with its principal place of business in New York; (iii) is headquartered in and maintains

5

its principal place of business in New York; and (iv) has never conducted business in the state of New Jersey. (*Id.* ¶¶ 4 & 6–15).

Based on these undisputed facts and absent any argument to the contrary,[2] the Court agrees that general jurisdiction is lacking.

## B.    Specific Jurisdiction

Specific jurisdiction arises from "'an affiliation between the forum and the underlying controversy'"; a district court exercising specific jurisdiction "'is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For specific jurisdiction to exist, a plaintiff must establish three elements. "First, the defendant must have purposefully directed its activities at the forum. Second, the plaintiff's claims must arise out of or relate to the defendant's activities. And third, exercising personal jurisdiction must not offend traditional notions of fair play and substantial justice." *Danziger*, 948 F.3d at 129–30 (quotation marks, alterations, and citations omitted).

The first two parts of the test are often discussed in tandem under the rubric of "minimum contacts." *Pilatus Aircraft*, 566 F.3d at 102. In considering a defendant's minimum contacts with the forum and purposeful availment in

---

[2]      Plaintiff submitted a declaration in opposition to Defendants' motion. The declaration is not accompanied by any brief containing legal arguments. I interpret the declaration to suggest only that specific personal jurisdiction exists over the Defendants.

contract cases, courts must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). With respect to the second prong—the connection between the contacts and the contract claims—the analysis begins with but-for causation. *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 187 (3d Cir. 2011) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007)). However, "[b]ut-for causation is not enough: 'the defendant's contacts with the forum must have been instrumental in either the formation of the contract or its breach.'" *Danziger*, 948 F.3d at 130 (quoting *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (alterations omitted)).

With respect to the third prong, the Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness: (i) the burden on the defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the procedural and substantive interests of other nations.  *O'Connor*, 496 F.3d at 324.

Defendants argue that they and the subject matter of this dispute have no connection to New Jersey. The complaint, they point out, "is devoid of any allegations of activities in New Jersey that might support the imposition of specific jurisdiction on any Defendant." (Mov. Br. at 7).

7

Neither the Complaint nor its attached exhibits reveal any significant nexus among the claimed breach of the agreement, the Defendants, and the state of New Jersey. Specifically, as Defendants point out, the Note (i) was made and executed in New York (Note at 1); (ii) concerns the sale of a parcel of real property located in New York from a Florida seller to a New York buyer (*id.*; Compl. ¶ 3); (iii) is governed by New York law pursuant to a choice of law provision (*id.* at 3); and (iv) is personally guaranteed by an individual with an address in New York (*id.* at 4). In addition, Defendants argue that "[n]o payment on the Note or any other action or omission concerning the instant dispute occurred in New Jersey." (Mov. Br. at 2). These contacts suggest a nexus between the transaction and New York, or possibly Florida, but not New Jersey.

Plaintiff's declaration in response suggests just one basis for specific jurisdiction: Defendants engaged in essential contract negotiations with the Trust's lawyer, whose office is located in New Jersey, the forum State. (Opp. Decl. ¶¶ 4–5). Plaintiff explains that the sale of the Property took place over the course of 6 months in 2014–15; "During that time there were dozens of communications and exchange of documents essential to the transaction between defendants' representatives and Mr. Kurnos whose office is in Morristown, NJ and who represented the Trust." (*Id.* ¶ 4). Plaintiff concedes that the exchange of emails, even a significant number of them, is not enough to establish specific jurisdiction. Rather, says Plaintiff, "it is the fact that defendants intended to obtain seller financing in order to purchase the

8

property and that these electronic communications that gave rise to the creation and modification of the pertinent documents . . . along with the corresponding negotiations were instrumental in achieving this end." (*Id.* ¶ 5). These communications, Plaintiff argues, were "intentional and purposeful with the aim being for the seller to obtain seller financing and to bring about the sale of the Orange County property." (*Id.*).

These facts, which I assume to be true, are insufficient to demonstrate the requisite minimum contacts with the state of New Jersey. To start, Plaintiff's argument lacks any indication of *purposeful* availment by Defendants. Although the Defendants, through their representatives, communicated with Mr. Kurnos, Plaintiff does not indicate that the Defendants were even aware of the Morristown location of Mr. Kurnos's office. (*See* Opp. Decl. ¶ 4).

Similarly unpersuasive is Mr. Havell's subjective statement that *he* "considered [Mr. Kurnos's] offices as the address of the trust." (*Id.* ¶ 2). I pause briefly to explore this carefully-phrased allegation. To begin with, there is no indication that this subjective belief was ever shared with the Defendants. (*Id.*). The Plaintiff attaches to its declaration a First Amendment to the trust documents, which made Kurnos an additional trustee and established his office as the Trust's address. But this Amendment post-dated the events in suit, and did not involve the Defendants at all. The deal was consummated and the Property conveyed in January 2015. (Compl. ¶ 3). The default allegedly occurred on August 1, 2019. (*Id.* ¶ 6). And it was only thereafter, on December

9

16, 2019, that Robert and Carol Havell named Kurnos as co-trustee and declared that the "primary office" of the Trust would be Kurnos's New Jersey office. (Amendment, Opp. Decl. Ex. A, DE 11 at 6). That post hoc, unilateral action by Plaintiff does not create any contact between the *Defendants* and New Jersey, or evince any intent to avail themselves of the privilege of doing business here.

There is no suggestion that the Defendants purposefully directed their activity at New Jersey by communicating with Plaintiff's lawyer, Mr. Kurnos, who happened to be located within the state. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). The location of the lawyer (particularly in relation to the claims of later nonpayment on the mortgage, *see infra*), is more fortuitous than purposeful. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Real Estate Sols. Today LLC. v. Scifo*, No. 20-4512, 2021 WL 486896, at *5 (D.N.J. Feb. 10, 2021) ("[T]here is no evidence that Defendants deliberately targeted any of their activities at New Jersey or purposefully availed themselves of the forum."); *Malek v. Chef's Roll, Inc.*, No. 18-03205, 2019 WL 3854303, at *7 (D.N.J. Aug. 16, 2019) (concluding that plaintiff provided enough evidence for the court to reasonably infer that defendant "knew or should have known it was dealing with a New Jersey resident and a New Jersey-based business").

Courts have held that repeated communications during the course of a contractual relationship may support a finding of personal jurisdiction with

10

respect to a claim of breach. *Remick*, 238 F.3d at 256. However, "[i]n determining [specific] jurisdiction over a breach of contract claim," the court "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Id.* As demonstrated by the complaint, the exhibits attached thereto, and Mr. Goldklang's affidavit, the totality of the circumstances point to New York, and perhaps Florida, but not to New Jersey. (*See supra* at pp 7–8; Goldklang Decl. ¶¶ 4–25).

Cases where communications helped establish personal jurisdiction over the defendant involved more substantial, purposeful, and ongoing communications than those alleged here.[3] *See e.g.*, *Malek*, 2019 WL 3854303, at *5–6 (summarizing emails which demonstrated the defendant's deliberate assumption of long term obligations to New Jersey citizens); *M&B IP Analysts, LLC v. Cortica-US, Inc.*, No. 19-0429, 2020 WL 3411027, at *4 (D.N.J. June 22, 2020) (similarly relying on declarations and exhibits submitted by both sides in concluding that defendant purposefully availed itself of a contractual relationship); *Vanz, LLC v. Mattia & Assocs.*, No. 13-1392, 2014 WL 1266220, at *4 (D.N.J. Mar. 26, 2014) ("Despite Geisler's lack of physical presence in New Jersey, the email communications and telephone calls when taken as a whole, demonstrate that Geisler purposefully directed his activities at New Jersey.").

---

[3]    I also note that the plaintiff in these cases submitted proofs of the relevant communications. Plaintiff did not do so here, but merely described them.

The communications in those cases, moreover, tend to involve ongoing communications in connection with a contractual relationship with a forum-state party. Not so here. The alleged communications here relate to the negotiation of the out-of-state sale of an out-of-state property between out-of-state parties.[4]

Accordingly, Plaintiff has not demonstrated that the Defendants have the requisite minimum contacts with the state of New Jersey, and as a result, this Court lacks jurisdiction over them.

## IV.   Dismissal or Transfer

Defendants brought their motion pursuant to Federal Rule 12(b)(2) seeking dismissal for lack of jurisdiction. However, the Third Circuit has instructed that "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger*, 948 F.3d at 132; *see also* 28 U.S.C. § 1631 (explaining that if jurisdiction is lacking, "the court shall, if it is in the interest of justice," transfer the case to a court in which the action could have been brought). The district court has broad discretion in this area, and although it may transfer a case sua sponte, "it need not investigate on its own all other courts that 'might' or 'could have' heard the case." *Danziger*, 948 F.3d at 132.

No party has advocated for transfer here. Based on the record, it seems likely that transfer to New York may be proper. If the Court did have

---

[4]      The communications, moreover, all relate to contract negotiations in 2014–15. Contract negotiations are certainly a but-for cause of the breach, but they are somewhat remote from the breach itself, i.e., failure to make payments when due over four years later.

12

jurisdiction, the Plaintiff likely would have to overcome a discretionary transfer or a venue challenge. However, it is not now apparent that transferring this case is "in the interest of justice."[5] Accordingly, and given the lack of argument to the contrary, I decline to exercise my discretion to transfer rather than dismiss this case. *See Traisman v. Khmelnitsky*, No. 19-11045, 2020 WL 2847751, at *10 n.10 (D.N.J. June 1, 2020).

## V.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) is GRANTED. An appropriate Order accompanies this Opinion.

Dated:  February 25, 2021

/s/ Kevin McNulty

_____

Hon. Kevin McNulty, U.S.D.J.

---

[5]    There is not, for example, a risk that Plaintiff's claims will be deemed untimely if refiled. New York law, which governs the parties' dispute, "provides a six-year statute of limitations for promissory notes." *Orix Fin. Servs., Inc. v. Barnes*, No. 05-9665, 2007 WL 2825881, at *4 (S.D.N.Y. Sept. 28, 2007).